**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

Samuel Hooker

     v.                                  Case No. 12-cv-346-JNL

United States Marshals Service et al.[1]

### REPORT AND RECOMMENDATION

Plaintiff Samuel Hooker brings this action, pursuant to

Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,

403 U.S. 388 (1971), against individually named employees of the

United States Marshals Service for the District of Maine

("USMS").  Before the court for a report and recommendation as to

disposition is the defendants' motion for summary judgment (doc.

no. 68) filed pursuant to Fed. R. Civ. P. 12(b)(6) and 56(b).[2]

Hooker objects (doc. no. 77).

Also before the court is Hooker's motion for default

judgment (doc. no. 72), to which defendants object (doc. no. 74);

Hooker's motion for entry of default (doc. no. 73); and the

defendants' objection thereto (doc. no. 75).  For the reasons

---

[1] The defendants to this action, who are all deputies with the
United States Marshals Service for the District of Maine, are:
Jesse Belanger, Andrew LeConte, Clairmont Forde, and Spencer
Christie.  All of the other defendants named in this action have
been dismissed.

[2] The parties have provided material for consideration that is
outside the pleadings.  Accordingly, defendants' motion, styled
as a motion to dismiss or for summary judgment, is treated as one
for summary judgment.  See Fed. R. Civ. P. 12(c).

that follow, the court recommends that the defendants' motion for summary judgment be granted and the plaintiff's motions for default be denied.

**Discussion**

I.   <u>Summary Judgment Motion</u>

   A.   <u>Standard</u>

"Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." <u>Flood v. Bank of Am. Corp.</u>, No. 14-1068, ___ F.3d ___, 2015 U.S. App. LEXIS 3090, *10 (1st Cir. Feb. 27, 2015) (citing Fed. R. Civ. 56(a)). "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." <u>Id.</u> "In deciding whether there is a genuine dispute about a material fact, we view the record 'in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor.'" <u>Id.</u> (quoting <u>Martinez-Burgos v. Guayama Corp.</u>, 656 F.3d 7, 11 (1st Cir. 2011)).

"The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" <u>Tobin v. Fed. Express Corp.</u>, 775 F.3d 448, 450 (1st Cir. 2014) (citation omitted). "[A] 'judge's function' at summary judgment

is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" <u>Tolan v. Cotton</u>, 134 S. Ct. 1861, 1866 (2014) (citation omitted).

"'The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists.'" <u>Rockwell v. SKF USA Inc.</u>, 687 F.3d 1, 9 (1st Cir. 2012) (quoting <u>Iverson v. City of Boston</u>, 452 F.3d 94, 98 (1st Cir. 2006)). "However, 'a conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden.'" <u>Rockwood</u>, 687 F.3d at 9 (quoting <u>DePoutot v. Raffaelly</u>, 424 F.3d 112, 117 (1st Cir. 2005)).

B.    <u>Local Rule 56 Compliance</u>

Pursuant to Rules 56(b) and (f) of the Local Rules for the United States District Court for the District of Maine ("LR"), the moving party must support a motion for summary judgment with a statement of material facts that is supported by a record citation. The nonmovant "must then submit a responsive 'separate, short, and concise' statement of material facts in which it must 'admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]'" <u>Bernier v. Unicco Serv. Co.</u>, No. 04-280-P-C, 2006 U.S. Dist. LEXIS 21778, *3 (D. Me. Apr. 19, 2006) (quoting

LR 56(c)), report and recommendation accepted in relevant part by
2006 U.S. Dist. LEXIS 34385, *3 (D. Me. May 26, 2006). "'Facts
contained in a supporting or opposing statement of material
facts, if supported by record citations as required by this rule,
shall be deemed admitted unless properly controverted.'"
Bernier, 2006 U.S. Dist. LEXIS 21778, at *4 (quoting LR 56(e));
see also Fed. R. Civ. P. 56(e)(2).

Here, defendants accompanied their summary judgment motion
(doc. no. 68) with a statement of material fact (doc. no. 69),
supported by six affidavits and other documentary exhibits, filed
pursuant to LR 56(b). Hooker filed an objection to the motion
(doc no. 77) and provided the court with his own affidavit (doc.
no. 78). Although Hooker did not file an opposing statement of
material facts as required under LR 56(c), the court construes
Hooker's affidavit liberally as an opposing statement of material
fact. Defendants have also filed a Reply Statement of Material
Facts (doc. no. 84), accompanied by three affidavits, and a
declaration of Edith Woodward (doc. no. 85). Hooker filed an
unsworn Response to Defendants' Reply Statement of Material Facts
(doc. no. 88), which does not comply with the requirements of LR
56(c).

The court deems all properly supported statements of fact
provided by defendants in support of the motion for summary
judgment (doc. nos. 69, 84 and 85) to be admitted by Hooker,

4

except to the extent they are disputed by the facts set forth in Hooker's affidavit (doc. no. 78). <u>See</u> LR 56(b), (c), and (f). The following facts relevant to the court's consideration of the motion for summary judgment (doc. no. 68) are undisputed and/or deemed admitted, pursuant to LR 56, except where otherwise indicated.

C.  <u>Background</u>

Hooker is a federal inmate who, at all times relevant to this action, was in the custody of the USMS, and was held at the Cumberland County Jail ("CCJ") in Portland, Maine. Hooker is confined to a wheelchair. He does not have the use of his legs and one of his arms is partially impaired.

On August 8, 21, and September 25, 2012,[3] Hooker was transported in the USMS prisoner transportation van ("USMS Van")[4] from the CCJ to the federal courthouse in Portland, Maine

---

[3] On September 25, 2012 the USMS has a record of Hooker being transported, but nothing in that record indicates that it was the USMS that transported Hooker on that date. Hooker alleges it was the defendants who transported him on that date. The defendants believe that Hooker was transported by Strafford County, New Hampshire, personnel on that date. This dispute of fact is not material to this court's recommendation in this matter. Accordingly, the court construes the disputed fact in favor of Hooker for purposes of considering the motion for summary judgment.

[4] The parties dispute whether the August 21, 2012, transport was via the USMS Van or a USMS-issued Chevy Impala sedan. This factual dispute is not material to the court's recommendation in this matter and need not be resolved at this time.

("Courthouse").  On August 8, 2012, deputy United States Marshals ("DUSMs") Spencer Christie and Clairmont Forde transported Hooker.  On August 21, 2012, DUSMs Andrew LeConte and Jesse Belanger transported Hooker.  On January 28, 2013, DUSMs Forde and LeConte transported Hooker.  Neither Hooker nor the defendants are able to identify the individuals who transported Hooker on September 25, 2012.

The USMS Van is not wheelchair-accessible.  The USMS does not own a wheelchair-accessible prisoner transport van.  On each of the above transport dates, Hooker states that he asked the defendants to accommodate him by transporting him in a wheelchair-accessible van.  Defendants deny that Hooker requested such an accommodation.  Neither transport by wheelchair-accessible van nor transport with a seatbelt, was identified as necessary for Hooker by Hooker's CCJ processing paperwork or by CCJ medical staff.

None of the defendants had been trained in transporting wheelchair-bound prisoners prior to transporting Hooker on the dates in question.  Additionally, with the exception of Belanger, none of the defendants involved in Hooker's transports had previously participated in the transport of a wheelchair-bound, paraplegic prisoner.[5]

---

[5] Belanger, while employed as a DUSM in the District of Utah, had previously transported a wheelchair-bound prisoner in essentially the same manner that defendants here transported Hooker.

When they transported Hooker, the defendants lifted Hooker out of his wheelchair and into the rear compartment of the USMS Van.[6] He was placed in a seated position on the floor with his back against the passenger side wall. The defendants seated Hooker on top of an air cushion taken from his wheelchair. They placed his wheelchair on its side next to him. Hooker reports that when he was placed into the USMS Van, something metal scraped his buttocks causing a bedsore, and that he was dragged across the floor, which aggravated his injury. Hooker's CCJ medical records do not reflect that Hooker either suffered or was treated for any bedsore or scrape while at the CCJ.[7]

---

[6] The USMS Van has three compartments, with a security screen between each compartment. The front compartment contains the driver and front passenger seats. The middle compartment contains two rows of bench seating that face forward. The third compartment contains one row of bench seating that faces the rear of the van and an open area approximately four feet deep, which extends across the width of the van. The benches in the second and third compartment also run the width of the van.

[7] Hooker has produced no evidence of either the bedsore or any other injury sustained during the transports, stating that he has "not been provided with the nurse's incident reports filed with his medical records as to prove the injuries sustained . . . ." See Response (doc. no. 88), at 3. According to Edith Woodward, a Physician Assistant employed at the CCJ, there is no indication in Hooker's medical records at the CCJ that Hooker suffered any scrapes, sores, or any other injury, or received any medical care, as a result of any USMS transport. See Declaration of Edith Woodward (doc. no. 85), at ¶¶ 4-6. This court need not resolve whether Hooker was injured to rule on the summary judgment motion.

Hooker's wheelchair, which does not fold, was transported with Hooker in the rear compartment of the USMS Van in which Hooker was seated. The defendants did not handcuff Hooker during transport. He could use his hands and arms to keep himself upright, and could also hold the rear bench seat. Hooker states that when he inquired about his lack of a seatbelt, the DUSMs responded that he should hold onto his wheelchair. The defendants deny both Hooker's questioning about a seatbelt and their alleged response about his chair. Hooker was not placed on a bench seat in the USMS Van because, at 6'3", 220 lbs., he was too heavy to lift, and could not be secured safely on a bench seat.

During each transport, Hooker states that his body twisted and turned, causing him pain. He further states that he suffered head and neck injuries as a result of being hit in the head by his wheelchair. Defendants assert that Hooker never complained to them about his injuries, that they never otherwise learned about such injuries, that they did not observe any evidence of injury to Hooker resulting from his transports, and that Hooker's CCJ medical records do not reveal that he sustained, complained of, or was treated for any such injury at the CCJ. Hooker also states that he saw the DUSMs burst out in laughter while transporting him. Defendants are unable to confirm that they did

not laugh during the transport of Hooker, but they deny laughing at him.

Each one-way transport between the CCJ and the courthouse was 1.5 miles long, and ten minutes in duration. On January 28, 2013, Hooker was transported in the USMS Van from the CCJ to the Portland Jetport, a 2.5 mile trip that took less than ten minutes.

On one occasion, after discussing with Christie, LeConte, and Belanger the difficulties of using the USMS Van for Hooker due to his height and weight, Supervising DUSM Dean Knightly authorized the use of LeConte's USMS-issued Chevy Impala sedan to transport Hooker.[8] Because the sedan does not have a security screen between the front driver and passenger seats and rear seat, inmate transport in the sedan contravenes USMS prisoner transport protocol. Further, because Hooker's wheelchair did not fold, a second vehicle and a third DUSM were required to transport the wheelchair.

D. <u>Eighth Amendment Claims</u>

Hooker claims that the defendants' failure to transport him in a wheelchair-accessible van and failure to secure him with a

---

[8] USMS records document use of the sedan to transport Hooker on August 21, 2012. Hooker recollects being transported in the sedan on November 13, 2012. This factual dispute, however, is not material to the court's recommendation as to summary judgment and need not be resolved at this time.

seatbelt when transporting him on the floor of the rear
compartment of the USMS Van violated the Eighth Amendment.
Hooker claims that the defendant DUSMs transported him in an
unsafe manner, creating a serious risk to his health and safety,
and did so with deliberate indifference to that risk.  Defendants
move for summary judgment on two bases: (1) the undisputed facts
in the record fail to demonstrate a constitutional violation, and
(2) defendants are protected from liability by qualified
immunity.

The Constitution requires prison officials to take
"reasonable measures to guarantee the safety of the inmates" in
their care.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  To
establish unconstitutional endangerment, an inmate must assert
facts to demonstrate that, objectively, he was incarcerated
"under conditions posing a substantial risk of serious harm," and
that the involved prison officials knew of and disregarded the
excessive risk to the inmate's safety.  Id. at 834.  An
official's knowledge of a substantial risk is a factual question
that may be demonstrated "'in the usual ways, including inference
from circumstantial evidence, and a factfinder may conclude that
a prison official knew of a substantial risk from the very fact
that the risk was obvious.'"  Calderón-Ortiz v. LaBoy-Alvarado,
300 F.3d 60, 65 (1st Cir. 2002) (quoting Farmer, 511 U.S. at
842).  On the other hand, officials will not be liable if they

responded reasonably to a known substantial risk.  See <u>Giroux v.</u>
<u>Somerset Cnty.</u>, 178 F.3d 28, 32 (1st Cir. 1999) (citing <u>Farmer</u>,
511 U.S. at 844).

Hooker has failed to raise a triable issue regarding whether
defendants acted with deliberate indifference to any risk of
harm.  <u>Cf.</u> <u>Dade v. Kennard</u>, No. 2:06-CV-869TC, 2008 U.S. Dist.
LEXIS 91962, at *6 (D. Utah Oct. 31, 2008) (transport of
quadriplegic inmate in standard van, and failure to fasten
inmate's seatbelt, on a few occasions, did not support contention
that prison staff were deliberately indifferent to disabled
inmates).  While it was obvious to defendants that Hooker was
disabled and confined to a wheelchair, and crediting as true
Hooker's statement that he asked for a seatbelt and to ride in a
wheelchair-accessible van, those facts, without more, do not
generate a triable issue regarding whether defendants knew of any
substantial risk of serious harm to Hooker and failed to take
reasonable steps to ameliorate that risk.  It is undisputed that
Hooker never complained to defendants that the trips caused him
pain or injuries, and nothing in his CCJ medical records suggests
he complained to any medical providers about such harm.  Neither
transport by wheelchair-accessible van nor transport with a
seatbelt, was identified as necessary for Hooker by Hooker's CCJ
processing paperwork or by CCJ medical staff.

Furthermore, it is undisputed that defendants in fact took steps to mitigate risks to Hooker.  The trips were short; defendants seated Hooker on an air cushion in the rear of the USMS Van, with his back against the rear side wall of the van, without handcuffs to afford him the use of his arms and hands to help him balance and hold onto the rear seat; and they obeyed traffic laws and drove carefully on each transport.  It is also undisputed that no wheelchair-accessible van was available for defendants' use in transporting Hooker, and that it was contrary to USMS protocol for them to use LeConte's sedan for transport.

For these reasons, Hooker has failed to carry his burden of showing that there is a genuine issue of material fact regarding whether defendants acted with deliberate indifference to any substantial risk of harm that may have been present in the manner in which he was transported.  Accordingly, summary judgment should be granted as to the Eighth Amendment claim, on the ground that plaintiff has failed to raise a triable issue regarding whether defendants were deliberately indifferent.

E.  <u>Qualified Immunity</u>

"The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." <u>Wood v.</u>

<u>Moss</u>, 134 S. Ct. 2056, 2066-67 (2014) (quoting <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2080 (2011)). "The 'dispositive inquiry,' . . . 'is whether it would [have been] clear to a reasonable officer' . . . 'that [their] conduct was unlawful in the situation [they] confronted.'" <u>Wood</u>, 134 S. Ct. at 2067 (citations omitted).

There was no clearly established right for an inmate in Hooker's circumstances to be seatbelted or placed in a wheelchair-accessible van for the short transports at issue. <u>See, e.g.</u>, <u>Christensen v. United States</u>, No. 5:14-134-DCR, 2014 U.S. Dist. LEXIS 167605, *11-*12 (E.D. Ky. Dec. 2, 2014) (citing <u>Dexter v. Ford Motor Co</u>., 92 F. App'x 637, 641 (10th Cir. 2004)); <u>Williams v. Kubis</u>, 2012 U.S. Dist. LEXIS 85654, *3-*5 (N.D. Ill. June 20, 2012) (collecting cases); <u>Dade</u>, No. 2:06-CV-869TC, 2008 U.S. Dist. LEXIS 91962, at *6. Therefore, even if the court were to find that plaintiff raised triable issues under <u>Farmer</u>, 511 U.S. at 832 and 834, defendants would be entitled to qualified immunity.

II. <u>Motions for Default</u>

In Hooker's first motion for default (doc. no. 72), he seeks a default judgment against defendants United States and the USMS. In its January 13, 2014, Order (doc. no. 38), those defendants were dismissed from this action. As Hooker's motion (doc. no.

72) seeks default judgment (doc. no. 72) against previously
dismissed parties, the motion should be denied.

In Hooker's second motion for default (doc. no. 73), he
seeks the entry of default against the individually named
defendants to this action, claiming that they have not answered
or defended the claims against them.  Hooker is incorrect in his
assertion.  As set forth in defendants' objection (doc. no. 75),
defendants have timely responded and defended the claims against
them.  Accordingly, Hooker's motion for entry of default (doc.
no. 73) should be denied.

### Conclusion

For the foregoing reasons, the district judge should grant
defendants' motion for summary judgment (doc. no. 68) and deny
Hooker's motions for default (doc. nos. 72 and 73).  The district
judge, upon approving this Report and Recommendation, should
direct that judgment be entered, and the case be closed.

Any objections to this Report and Recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2).  Failure to file objections within the
specified time waives the right to appeal the district court's
order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st
Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d
554, 564 (1st Cir. 2010).

/s/ Andrea K. Johnstone
                              Andrea K. Johnstone
                              United States Magistrate Judge

March 12, 2015

cc:  Samuel Hooker, pro se
     John G. Osborn, Esq.